## 84    PEOPLE ex rel. COPCUTT v. BD. OF HEALTH.

SECOND DEPARTMENT, JULY TERM, 1893.        [Vol. 71.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN COPCUTT v. THE BOARD OF HEALTH OF THE CITY OF YONKERS.

*Function of a certiorari — composition of the board of health of the city of Yonkers — abatement of ponds detrimental to the public health.*

A certiorari assumes the existence of the inferior officers or tribunal whose judicial action is sought to be reviewed, and the fact of the official proceedings, but draws in question the legality of such action. It brings up the record and is heard and decided upon the return, which is conclusive.

The number of members composing the board of health of the city of Yonkers, as prescribed by section 1 of title 9 of the city charter (Chapter 184 of the Laws of 1881), which designates "the supervisor" as a member of the board, was not changed by chapter 54 of the Laws of 1892, which provides for the election of a supervisor from each of the five wards of the city, there having been, prior to the passage of that act, but one supervisor for the entire city.

The action of the board of health of the city of Yonkers in enacting an ordinance by which certain dams and ponds of the relator were declared to be nuisances, detrimental to the public health, and were directed to be suppressed and abated, *held*, to be proper and valid.

CERTIORARI issued in accordance with an order made at the Orange County Special Term of the Supreme Court on the 15th day of April, 1892, upon the petition of the relator, John Copcutt, and directed to the board of health of the city of Yonkers and the members thereof.

*R. E. Prime* and *Calvin Frost*, for the relator.

*James N. Hunt*, for the defendant.

DYKMAN, J.:

This is a proceeding by certiorari to review the action of the board of health of the city of Yonkers in enacting the ordinance of April 5, 1893, by which certain dams and water ponds of the relator were declared to be nuisances, detrimental to the public health, and directed to be suppressed and abated.

The proceedings are challenged for irregularity. It is the claim of the relator that the board of health was not legally constituted at the time of the passage of the resolution of April, 1893.

In the case of *The People ex rel. D. & H. C. Co.* v. *Parker* (117 N. Y. 86), it was decided that the function of a certiorari is to review the judicial action of inferior officers and tribunals. It assumes their existence, and the fact of official proceedings, but

draws in question the legality of such action. It brings up the record, and is heard and decided upon the return, which is taken as conclusive (*People ex rel. Sims* v. *Fire Commissioners*, 73 N. Y. 437), and that states that the resolution was adopted. Independent of this rule of law, however, the objection is baseless. The board of health of the city of Yonkers was created by the city charter. (Section 1 of title 9 of chapter 184 of the Laws of 1881.) The first part of that section is this: "The mayor, the supervisor, the president of the common council, the president of the board of water commissioners, the president of the board of police, and the health officer, shall constitute the board of health of the city" of Yonkers. That made six members of the board, and four of those six were present at the time of the action which is under review. The point made by the relator is based upon chapter 54 of the Laws of 1892. That act amended two sections of the charter of the city of Yonkers. Prior to the passage of the act of 1892, there had been four wards in that city. The act of 1892, by section 1, created a fifth ward. By section 2, that act provided for the election of two aldermen from each ward, including the new fifth ward. Section 3 provided for election districts, and section 4 provided, among other things, for the election of a supervisor from each of the five wards of the city, and the claim of the relator is, that each of those supervisors are members of the board of health of the city.

Prior to the passage of the act of 1892, there had been but one supervisor for the entire city, and that supervisor was a city officer, and not a ward officer.

The act of 1892, which is an amendment to the city charter, only amended section 1 of title 1, and section 1 of title 2, of the city charter.

It did not attempt to amend section 1 of title 9, which prescribes the constitution of the board of health, and the officers which shall constitute the same.

Our conclusion, therefore, is that the organization and constitution of the board of health remains as it was under the charter act of 1881, composed of six members only.

Neither did the act of 1892 amend section 16 of title 3 of the charter, which is as follows: "The supervisor shall be a member of

86    PEOPLE ex rel. COPCUTT v. BD. OF HEALTH.

Second Department, July Term, 1893.          [Vol. 71.

the board of supervisors of the county of Westchester. He shall have the powers and discharge for the city the duties of supervisors of towns, except as otherwise provided in this act. He shall receive the compensation allowed by law in like manner as supervisors of towns in said county." With this section 16 standing unamended, it is very clear, under section 1 of title 9 of the charter, that the board of health of the city of Yonkers was, at the time of the passage of the ordinance under review, composed of not more than six members.

Upon the merits, the case is plainly with the defendant. Although the proceedings under review related to the fifth and sixth water powers, yet it was agreed that the testimony taken in an action tried at the Special Term between these same parties, in Westchester county, should be considered in evidence in this proceeding, and that, in connection with the testimony returned by the board, shows that all the ponds are foul receptacles of filth and putrefaction.

They are foul and polluted to an extent which is shocking to the sense and dangerous to health and life. They have received the condemnation of the local and State boards of health, and the court has held them to be dangerous public nuisances.

The claim of the relator that the ponds have ceased to be offensive or dangerous since the large mills ceased to drain therein, in the summer of 1892, is unsupported by testimony or reason.

It is true some witnesses so testified in the trial at Special Term, but their testimony was very unsatisfactory and in some cases suspicious, and it was completely overthrown by the general weight of evidence. Moreover, it became quite plain that the alkalies and other chemicals, which were emptied into the ponds from the factories, tended rather to correct the impurities than to aggravate them.

The views expressed in the opinion delivered at the Special Term and printed in this record are applicable to this case, and may be considered as adopted here without repetition.

The proceedings of the board of health should be affirmed, with costs.

BARNARD, P. J., concurred.

Proceedings of board of health of Yonkers affirmed, with costs.

The opinion referred to, delivered at the Westchester Special Term in the action of *The Board of Health of the City of Yonkers* v. *John Copcutt,* is as follows :

DYKMAN, J. :

The testimony in this action discloses the existence of an intolerable nuisance in the city of Yonkers.

In the heart of that city of 30,000 inhabitants, environed by dwellings in close proximity to its shore, the defendant in this action has for many years maintained a mill pond, whose bed is covered to the depth of seven feet with foul sediment impregnated with offscourings and putrid substances, covered at times with polluted water, and at times bare, giving off noxious, offensive and sickening odors, which endangered the lives and health of the people.

This action is brought to secure the abolition of the nuisance, and it will be a reproach to the law if its object cannot be accomplished. While it is true that the complaint contains counts upon by-laws for the recovery of penalties, yet the great and paramount object of the action is as already stated.

It may be observed, however, that by-laws of corporations and boards, made under authority of the Legislature, in conformity to the power delegated, have the same force as legislative enactments. (*McDermott* v. *The Board of Police,* 25 Barb. 635.)

Their history is briefly this : When the Danes acquired possession of a shire in England, the township was often called a " by," and as they enacted laws of their own they were called by-laws or town laws. In modern times the term is employed to denote the private laws of corporations or other boards or bodies.

As the powers of the board of health are derivative and limited, it is important to ascertain at the outset whether the plaintiff is acting within the scope of its authority.

Section 1 of title 9 of the charter of the city of Yonkers, which was passed in May, 1881, provided for the organization of a board of health.

Section 2 authorizes the board, among other things, to suppress, abate and remove any public nuisance detrimental to the public health, to ordain a sanitary code and all ordinances necessary to carry into effect the powers of the board, and to enforce observance of its sanitary code and by-laws, by the imposition of penalties for

their violation, and to maintain actions in any court of competent jurisdiction, in the name of the board of health of the city, to recover such penalties and to restrain by injunctions such violations, or both.

In addition to the powers expressly granted therein, the board is to have and exercise all the powers then and at any time thereafter conferred upon boards of health in cities by any general law.

By the provisions of subdivision 4 of section 3 of chapter 270 of the Laws of 1885, passed in May, 1885, which is an act for the preservation of the public health, the several boards of health then organized in any city, village or town in this State, except New York, Brooklyn and Buffalo, were clothed with power, and it was made their duty, to order the suppression and removal of nuisances and conditions detrimental to life and health, found to exist within the limits of their jurisdiction.

Subdivision 9 of section 3 is as follows : " To impose penalties for the violation of, or non-compliance with, their orders and regulations, and to maintain actions in any court of competent jurisdiction, to collect such penalties not exceeding one hundred dollars in any one case, or to restrain by injunction such violations, or otherwise to enforce such orders and regulations."

These provisions, therefore, supplement the city charter act, and with it confer the most ample power in all cases where necessity requires action and the subject falls within the jurisdiction of the board of health.

The power to maintain actions for penalties, and to restrain by injunction the violation of ordinances, is sufficiently comprehensive to justify this action, and the same facts which establish a violation of the by-laws and the sanitary code will justify a permanent injunction.

It has already been said that the evidence is sufficient to establish the existence of an insufferable nuisance upon the land of the defendant, which is maintained by him.   It is equally plain that the nuisance is detrimental to the public health, and requires heroic treatment.

Unlike the case of a business which is a nuisance, and which may be suppressed by the discontinuance of the cause without the

PEOPLE ex rel. COPCUTT v. BD. OF HEALTH.    89

Hun.]            Second Department, July Term, 1893.

destruction of the property, the nuisance in this case inheres in the property.

The pond itself is the nuisance, and the abolition of the one is essential to the abatement of the other. The evil is radical and cannot be eradicated without the discontinuance of the pond.

Actions of this kind, in which similar relief is administered, are by no means infrequent, and are based upon the maxim which requires all persons to so use their own property so as not to injure others.

The maxim embodies both a legal and ethical principle of universal applicability. It lies at the foundation of the police power of the State, which is exerted to prohibit any use of property in a densely populated community which is a nuisance detrimental to public health. It is sufficient to justify the destruction as well as the regulation of the use of property dangerous to health and life.

All property is held upon the condition that its use shall not be detrimental to the public. The private interests and individual rights of the defendant, like those of all other persons, are not absolute, and must yield to the public welfare. Actions of this character, in favor of private individuals who have sustained peculiar injuries from nuisances, are not infrequent in this State, and the courts have gone far in the administration of complete relief.

*Adams* v. *Popham* (76 N. Y. 410), was an action to restrain a nuisance, and was quite similar to this, except that the case was less aggravating.

The facts were these: The defendant had constructed a dam across a small stream of water running through his own land, and then created a pond of water near the dwelling house of the plaintiff. As the water collected it became stagnant, the bed of the pond was covered with sediment, and from the sides thereof, as they became bare and exposed to the sun, there arose noxious and poisonous effluvia and malaria, which tainted and poisoned the atmosphere. Such exhalation reached the dwelling house of the plaintiff, rendering it dangerous to life and health.

The family of the plaintiff was made sick thereby, and she sustained special injury from the nuisance. The trial court rendered

a judgment for the plaintiff, perpetually enjoining the defendant from maintaining and continuing the dam and pond.

That the defendant be enjoined to remove all obstructions to the running of the water in the stream, so that the water might run in the same manner it did before any dam was made thereon; and further, that the defendant be restrained from maintaining the pond by means of a dam or otherwise, or doing any act whereby the stream should be prevented from flowing as it was wont to do.

That judgment was affirmed both by the General Term and the Court of Appeals, and in the latter court it was said: "A person may enjoy his own property in any lawful manner, but may not do so to the injury of others." Such are the principles and such the authority upon which my decision is based. Other authorities there are, but their citation is deemed unnecessary.

They are all in unison. Slaughter houses, fat boileries, and all similar nuisances have been driven back before the advance of population, and the courts have been ever ready to compel them to recede. The individual consequences have frequently been severe.

They will be so here, and that knowledge has induced an unusually careful consideration of this case. Yet it presents a great evil for which the law has a remedy that must be administered. A nuisance detrimental to life and health must not be permitted in a great city.

Judgment must be rendered in favor of the plaintiff for the relief demanded in the complaint. That will abolish one pond; but there will be no complete relief until the entire chain of ponds is abolished, and the stream permitted to flow in its natural course, without a place for the secretion and accumulation of deleterious or noxious matter.